1  Donald S. Edgar, Esq. (SBN 139324)
2  Jeremy R. Fietz, Esq. (SBN 200396)
   Rex Grady, Esq. (SBN 232236)
3  *EDGAR LAW FIRM*
   408 College Avenue
4  Santa Rosa, California, 95401
5  Tel:   (707) 545-3200
   Fax:   (707) 578-3040
6
7  Attorneys for Plaintiff,
   JENEANE F. BAQUE,
8  individually and on behalf of all others
9  similarly situated

10              **UNITED STATES DISTRICT COURT**

11           **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

12

13  JENEANE BAQUE, individually and on    )    CASE NO.
14  behalf of all others similarly situated,   )
                                               )
15              Plaintiffs,                    )    **COMPLAINT FOR DAMAGES AND**
                                               )    **EQUITABLE RELIEF**
16                                             )
17      v.                                     )
                                               )    **CLASS ACTION**
18                                             )
19  MEDTRONIC, INC., a corporation,           )
                                               )    **DEMAND FOR JURY TRIAL**
20              Defendant.                     )
                                               )
21                                             )
22                                             )
                                               )
23                                             )

24

25                           **PREAMBLE**

26      Plaintiff JENEANE BAQUE, by her undersigned counsel, for herself and all others

27  similarly situated, hereby commences this individual and Class Action against Medtronic, Inc.,

28  (hereinafter collectively "Defendant" or "Medtronic," unless otherwise stated) for compensatory,

                                  - 1 -

1  equitable, injunctive, and declaratory relief. Plaintiff makes the following allegations based
2  upon her personal knowledge as to her own acts, and upon information and belief, as well as
3  upon her attorneys' investigative efforts as to Medtronic's actions and misconduct, and alleges as
4  follows:

## PARTIES

6  1.    Individual and representative Plaintiff Jeneane Baque is a citizen and resident of
7  the State of California.

8  2.    Defendant Medtronic, Inc is a Minnesota corporation, with its principal place of
9  business at 710 Medtronic Parkway, Minneapolis, Minnesota 55432.   Medtronic develops
10 technology to treat conditions such as heart disease and other illnesses. Medtronic manufactures
11 medical devices throughout the United States, including in the Northern District of California,
12 and sells these devices worldwide. Medtronic's Cardiac Rhythm Disease Management Division
13 ("CRM Division") is the division that develops, researches, advertises, promotes, markets and
14 sells all of Medtronic implantable defibrillators ("ICDs"), and leads, some of which are marketed
15 under the trade name "Sprint Fidelis." CRM Division's operations are principally conducted out
16 of its facilities at Cardiac Rhythm Disease Management at 7000 Central Ave., Minneapolis,
17 Minnesota 55432.

## INTRODUCTION

19 3.    Medtronic designs, researches, develops, manufactures, tests, markets, advertises,
20 promotes, distributes, and sells products that treat cardiac arrhythmias, heart failure, and
21 coronary and peripheral vascular disease. An arrhythmia is an irregular cardiac rhythm, which
22 can cause significantly decreased cardiac output and ultimately, death. Medtronic holds itself
23 out as "the global leader in medical technology, alleviating pain, restoring health and extending
24 life for millions of people around the world." (*See* 2005 Annual Statement, Medtronic, Inc.).

25 4.    A number of devices designed to detect and treat abnormally fast and irregular
26 heart rhythms and to provide pacing for improper heart rhythms are available from Medtronic
27 and other manufacturers, including implantable cardiac defibrillators ("ICDs"). ICDs contain
28 pacemakers as well as defibrillators; while a pacemaker is used primarily to correct slow heart

- 2 -

Class Action Complaint For Damages and Equitable Relief

1   rates, an ICD detects and corrects both fast and slow heart rates. The pacemaker portion corrects
2   the slow rates and the anti-tachycardia portion can "over-drive pace" rapid rates. The
3   defibrillator portion can shock ventricular tachycardia and ventricular fibrillation to stop the
4   heart and allow an appropriate rhythm to take over.

5       5.    ICDs are designed to be implanted primarily under the skin of the chest wall. The
6   device's power source, or pulse generator, is implanted in a pouch formed in the chest wall
7   generally over the left pectoralis major muscle.

8       6.    Typically, wires called leads are inserted through a major vein and attached
9   directly to the muscle on the inside of the heart. Electrodes that sense the heart's rhythm are
10  built into the lead wires and positioned in the heart, where they monitor the heartbeat and can
11  administer an electric shock to abort a dangerous "over-drive pace," a very rapid rhythm, or pace
12  the heart at a normal rhythm if an irregularity is detected.

13      7.    Such devices are used in patients, like Plaintiff, who have arrhythmias or irregular
14  heartbeats that are considered life-threatening. The Class members with these medical problems
15  include patients who are at risk for ventricular fibrillation (rapid, ineffective contraction of the
16  ventricles of the heart), ventricular tachycardia (excessively rapid heartbeat) that is poorly
17  controlled by medication. These arrhythmias or irregular heart beats can result in the loss of
18  consciousness or death, unless the patient receives therapy from an appropriate device to put the
19  heart back into an appropriate cardiac rhythm.

20      8.    If an implanted ICD and lead operate properly, the system can save a patient's
21  life. If either fails to operate, the patient may die within minutes.

22              **THE SPRINT FIDELIS LEADS**

23      9.    This Class Action seeks recovery for patients who have been implanted with
24  Sprint Fidelis leads marketed by Medtronic under the following model numbers:

25          (i)    the 6949 LFJ extendable/retractable screw fixation (S) model,
26          (ii)   the 6948 LFH tuned fixation (T) model,
27          (iii)  the 6931 LFT S fixation, and,
28          (iv)   the 6930 LFK T fixation.

- 3 -

10.    At all times relevant, these Sprint Fidelis leads were researched, developed, manufactured, marketed, promoted, advertised, sold, and distributed by Medtronic to be used in connection with ICDs.

11.    The majority of ICDs now use two or three leads. As a result, smaller high-voltage leads are attractive to electrophysiologists because they are believed to be easier to insert, and are less likely to obstruct blood flow or distort the tricuspid valve. The Medtronic Sprint Fidelis leads are smaller high voltage leads.

12.    In 2001, Medtronic marketed its then-smallest defibrillation lead called the Sprint Quattro Secure, model 6947 ("Quattro leads").

13.    In 2004, Medtronic introduced and marketed the Sprint Fidelis to replace the Sprint Quattro as the high voltage lead of choice and to attempt to gain a larger market share.

14.    At the time that Medtronic announced the marketing of the Sprint Fidelis leads, Medtronic claimed that "[t]he small size of the Sprint Fidelis (Fidelis is a Latin word that means 'faithful') helps improve passage into a patient's venous system for an easier implant, and minimizes venous obstruction." In a News Release dated September 2, 2004, Medtronic also referred to the leads as "state-of-the-art."

15.    Medtronic further represented that the Sprint Fidelis leads were based on the "proven" design of the Quattro leads.

16.    The Sprint Fidelis leads were approved for sale by the United States Food and Drug Administration (the "FDA") in September 2004 and have been implanted in over 160,000 patients worldwide.

17.    The Sprint Fidelis lead is a 6.6 French isodiametric multifilar true bipolar high voltage lead with silicone insulation and polyurethane outer coating.

18.    The Models 6949 and 6948 have two high voltage coils; the 6930 and 6931 models have a single right ventricular high voltage coil. As of January 2007, approximately 144,311 model 6949 Sprint Fidelis leads, 7510 model 6948 leads, 5387 model 6931 leads, and 236 model 6930 leads had been implanted.

- 4 -

1

## THE DEFECTS IN THE SPRINT FIDELIS LEADS

2      19.     Since the Sprint Fidelis leads were introduced to the market, it has become

3    evident that a significant portion of the leads have potentially fatal defects.

4      20.     Such defects were discussed in an article written by doctors at The Minneapolis

5    Heart Institute, one of the premiere heart institutes in the world, based on a study of the

6    incidence of lead failures in the Sprint Fidelis models compared to the Sprint Quattro models.

7    According to the report, which was prepared by Dr. Robert G. Hauser, *et al.*, and published in

8    the *Heart Rhythm Society Journal* in the Spring of 2007, "Early Failure of Small-Diameter High-

9    Voltage Inflammable Cardioverter-Defibrillator Lead", Heart Rhythm Society 2007.03.041

10   (2007) ("Early Failure"), the Minneapolis Heart Institute's experience reflected that, between

11   September 2004 and February 2007, 583 patients were implanted with Sprint Fidelis Model 6949

12   leads, and nine patients received other Sprint Fidelis models.  During that time, six patients

13   experienced Sprint Fidelis Model 6949 lead failures.  The failed Sprint Fidelis Model 6949 leads

14   had been implanted by various electrophysiologists, cardiologists and thoracic surgeons.  The

15   average time to failure was fourteen months (based on a range of four to twenty-three months).

16   *Early Failure*, p. 893.

17     21.     The study compared the actuarial survival of the 583 Sprint Fidelis Model 6949

18   leads implanted at the Minneapolis Heart Institute to the survival of 285 Sprint Quattro Model

19   6947 leads implanted at the Institute between November 2001 and March 2007.  The difference

20   in survival between the Sprint Fidelis Model 6949 lead and the Sprint Quattro Secure Model

21   6947 lead was extremely significant.  The failure rate for the Sprint Fidelis Model 6949 lead was

22   1-2% during the first two years of implant and was ten times greater than the failure rate for the

23   Sprint Quattro Secure Model 6947 lead. *Early Failure*, p. 893-894.

24     22.     The significant number of lead failures involved lead fractures of the PACE-sense

25   conductor or coil in the Sprint Fidelis Model 6949.  The fracture rate for the Sprint Fidelis leads

26   was three times higher than the fracture rate of the Quattro Model 6947. *Early Failure*, p. 894-

27   895.

28

- 5 -

Class Action Complaint For Damages and Equitable Relief

23. Another study, conducted at Cornell University Medical Center by Sunil Mirchandani, *et al.*, found "(a) 17% incidence of abnormal right ventricular sensing during follow-up of patients implanted with the Medtronic Sprint Fidelis ICD lead," necessitating "an early revision of the system in 4% of patients."

24. Medtronic has not disclosed the precise mechanism of the Sprint Fidelis lead fracture failures. However, it appears that the defect in the Sprint Fidelis may be attributable to the small diameter of the coil and conductors and the fact that, in light of this small diameter, it is subject to stress damage both during and after implant. Fracture eventually occurs when the conductor is critically overstressed. The number of fractures that have been observed in these leads indicates that there is a clear defect in the leads themselves, and that defect was demonstrated in the 6949 leads that were implanted in Plaintiff Jeneane Baque. Plaintiff Baque requires medical monitoring of her 6949 leads.

25. A review of the FDA's MAUDE database, which contains reports of adverse events associated with the use of medical devices, discloses that, as of July 2007, over 1000 Medical Device Reports ("MDR"s) regarding Sprint Fidelis lead had been filed since September 2004. The most frequent complaints were fracture and inappropriate shocks, and the most common observations were high impedance, over-sensing and noise, and failure to capture or high threshold.

26. Medtronic analyzed approximately 125 of those leads that were returned to Medtronic before July 2006. According to the relevant MDR reports, Medtronic concluded that 77 out of 125 leads (or 62%) were defective. The predominant manifestation of the defect was conductor fracture, involving the PACE-sense conductor and coil or the high voltage (defibrillation) conductor. PACE-sense conductor or coil fracture was manifested by inappropriate shocks or over-sensing/noise and high impedance, while high voltage conductor fracture was primarily linked to high impedance.

27. Medtronic filed more than 350 additional MDRs regarding the Sprint Fidelis leads between August 2006 and February 2007. Medtronic did not include similar analysis of those leads in the MDRs filed by Medtronic during this period.

- 6 -

28.    On March 21, 2007, Medtronic issued a physician advisory, in the nature of a "Dear Doctor Letter," that advised physicians of "the higher than expected conductor fracture rates in … Sprint Fidelis leads." Medtronic claims in that letter to be investigating reports of lead failures, however, still represents that the Sprint Fidelis leads are performing consistent with, and "in line with other Medtronic leads …. And consistent with lead performance publicly reported by other manufacturers." This letter also states, "…variables within the implant procedure may contribute significantly to these fractures… For conductor fractures that occur around the suture sleeve, our preliminary investigation suggests that under certain implant techniques, the lead appears to be exposed to severe bending or kinking in the pectoral area." At no time prior to this letter did Medtronic warn physicians that its leads must be specially handled during the implantation procedure or that they could "severely bend" or "kink" if they are implanted using certain accepted implant techniques.

29.    On October 15, 2007, Medtronic recalled all unimplanted Sprint Fidelis leads, citing several deaths related to the leads. Medtronic recommended that implanted Sprint Fidelis leads be monitored.

30.    Medtronic's representation of the consistency of the performance of the Sprint Fidelis leads is untrue in light of the reported experience with the leads and the various issues included in the MAUDE database reports.

31.    At all times relevant, Medtronic misrepresented the safety of the Sprint Fidelis leads and negligently manufactured, marketed, advertised, promoted, sold, and distributed the leads as safe devices to be used together with ICDs for prophylactic treatment of patients with prior myocardial infarction and decreased ejection fraction, ventricular arrhythmias, and patients who are at high risk for developing such arrhythmias. Some patients are dependent on such devices to maintain an appropriate heart rhythm, and therefore, adequate cardiac output. For these patients, failure of the leads connected to the ICD can cause sudden faintness, or loss of consciousness, and can result in death.

Class Action Complaint For Damages and Equitable Relief

1    32.    At all times relevant, Medtronic failed to warn that the Sprint Fidelis leads were
2    prone to breakage or that particular processes should be implemented in order to avoid breaking
3    the Sprint Fidelis leads.

4    33.    As a result of their defective design and manufacture, Medtronic's Sprint Fidelis
5    leads suffer fracture, leading to malfunction in the transmission of the electric signal from the
6    ICD to the patient's heart.

## SUMMARY OF ALLEGATIONS

8    34.    At all times relevant, the Sprint Fidelis (collectively the "leads") were researched,
9    developed, manufactured, marketed, promoted, advertised and sold by Medtronic.

10    35.    At all times relevant, Medtronic misrepresented the safety of the Sprint Fidelis
11    leads, and negligently manufactured, marketed, advertised, promoted, sold and distributed the
12    leads as safe and effective devices to be used for implantation with ICDs for prophylactic
13    treatment of patients with prior myocardial infarction and a limited ejection fraction, patients
14    who have had spontaneous and/or inducible life-threatening ventricular arrhythmias, and patients
15    who are at high risk for developing such arrhythmias.

16    36.    At all times relevant to this action, Medtronic knew, and had reason to know, that
17    the Sprint Fidelis leads were not safe for the patients for whom they were prescribed and
18    implanted, because the leads fractured and otherwise malfunctioned, and therefore failed to
19    operate in a safe and continuous manner, causing serious medical problems and, in some
20    patients, catastrophic injuries and deaths.

21    37.    At all times relevant to this action, Medtronic knew, and had reason to know, that
22    its representations that the Sprint Fidelis leads were easier to implant and based on "proven"
23    technology were materially false and misleading.

24    38.    Approximately 129,000 of the affected devices remain in service in the United
25    States and in other countries.

26    39.    As a result of this defective design and manufacture, the Sprint Fidelis leads can
27    cause serious physical trauma and/or death.  Medtronic knew and had reason to know of this
28    tendency and the resulting risk of injuries and deaths, but concealed this information and did not

- 8 -

Class Action Complaint For Damages and Equitable Relief

1    warn Plaintiff or their physicians, preventing Plaintiff, the Class and their physicians, and the

2    medical community from making informed choices about the selection of leads for implantation.

3                                    **JURISDICTION AND VENUE**

4        40.    The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (d)

5    because this action is a class action that involves parties and class members who are citizens of

6    different states and the value of the matter in controversy exceeds the sum or value of

7    $5,000,000, exclusive of interest and costs.

8        41.    The Court also has subject matter jurisdiction pursuant to 28 U.S. § 1332 (a)

9    because this action involves parties who are citizens of different states and the value of the

10   matter in controversy exceeds $ 75,000, exclusive of interests and costs.

11       42.    Venue is proper under 28 U.S.C. § 1391 (a) because this action involves parties

12   who are citizens of different states and the acts or omissions giving rise to the Plaintiff's claim

13   occurred in this Judicial District.

14       43.    Venue is also proper under 28 U.S.C. § 1391 (b) because the Court's jurisdiction

15   is not founded primarily on diversity of citizenship and a substantial part of the events or

16   omissions giving rise to the Plaintiff's claim occurred in this Judicial District.

17       44.    Venue is also proper under 28 U.S.C. § 1391 (c) because the Defendant is a

18   corporation that was subject to the personal jurisdiction of this Court at the time this action

19   commenced, and because the Defendant has contacts sufficient to subject it to the Court's

20   personal jurisdiction if this Court's District were a separate State.

21                                   **CLASS ACTION ALLEGATIONS**

22       45.    Plaintiff brings this action on behalf of herself and all others similarly situated, as

23   members of a proposed Plaintiff class (the "Class") of all individuals who have been implanted

24   with the leads at issue, and propose a Nationwide Class, or in the alternative fifty-one statewide

25   classes, each composed of:

26       •      All residents and domiciliaries of the United States who have been implanted with

27              Sprint Fidelis leads manufactured by Medtronic ("patient recipients"), during the

28              period from January 1, 2004 through the present (the "Class period");

                                            - 9 -

1

2

3

4

5

6

7

8

9

- The estates, representatives, and administrators of deceased patient recipients; and,

- The spouses, children, relatives, and "significant others" of deceased patient recipients as their heirs or survivors.

- Excluded from the proposed subclass are (i) Medtronic, any entity in which Medtronic has a controlling interest or which have a controlling interest in Medtronic, and Medtronic's legal representatives, predecessors, successors and assigns; (ii) the judicial officers to whom this case is assigned; and (iii) any member of the immediate families of excluded persons.

10     46.     The Class is so numerous that the individual joinder of all its members is

11   impracticable.   While the exact number and identification of Class members is unknown to

12   Plaintiff at this time and can only be ascertained through appropriate discovery of Medtronic,

13   Plaintiff is informed and believes that the Class includes more than 100,000 patient recipients

14   worldwide.

15     47.     This action is brought and may properly be maintained as a class action pursuant

16   to the provisions of *Federal Rule of Civil Procedure* 23(a)(1)-(4), 23(b)(2), and 23(b)(3) and/or

17   23(c)(4)(A). This action satisfies the numerosity, commonality, typicality, adequacy,

18   predominance, and superiority requirements of those provisions. Common questions of fact and

19   law exist as to all Class members which predominate over any questions affecting only

20   individual Class members. These common legal and factual questions, which do not vary from

21   Class member to Class member, and which may be determined without reference to the

22   individual circumstances of any Class member, include, but are not limited to, the following:

23

24

- (a)     Whether there are design and/or manufacturing defects in Medtronic's Sprint Fidelis leads;

25

26

27

28

- (b)     Whether Medtronic failed to follow United States Food & Drug Administration ("FDA") good manufacturing practices, failed to properly investigate manifestations of the lead defects over the past several years, failed to adequately document reports of the defects, and failed to exercise adequate quality control;

- 10 -

Class Action Complaint For Damages and Equitable Relief

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

(c)  Whether Medtronic's conduct in designing, manufacturing, marketing, and monitoring the Sprint Fidelis leads fell below the duty of care owed by Medtronic to Plaintiff and the other Class members;

(d)  Whether Medtronic intentionally, deliberately, uniformly, knowingly, carelessly, recklessly, or negligently misrepresented, omitted, concealed and suppressed material and important information regarding the existence of a defect in the Sprint Fidelis leads from Plaintiff, the FDA, physicians and Class members;

(e)  Whether the Sprint Fidelis leads listed in the proposed class definition share common and inherent design and manufacturing defects that cause them to fracture and malfunction, causing inappropriate shocks and failure to deliver an effective shock when needed, creating a risk of injury or death to patients in whom they were implanted;

(f)  Whether Medtronic negligently, intentionally, deliberately, uniformly, or recklessly materially misrepresented, concealed, omitted, or suppressed the quality and usefulness of the leads, thereby inducing Plaintiff and the Class to accept implantation of the Sprint Fidelis leads rather than another brand of leads, which would not have been prone to the defects;

(g)  Whether Medtronic is liable for selling a dangerously defective product;

(h)  Whether Medtronic failed to adequately warn or notify patient recipients, the medical community, and the regulators of the defect, dangers, disadvantages and hazards of the leads;

(i)  Whether Medtronic failed to adequately warn or notify hospitals and physicians regarding the defect, malfunction and/or hazards of the defective leads;

(j)  Whether Medtronic breached express or implied warranties;

(k)  Whether Medtronic's conduct constitutes negligence;

(l)  Whether Medtronic is liable for infliction of emotional distress;

(m)  Whether Medtronic's misconduct violated applicable consumer protection statutes;

- 11 -

1        (n)     Whether Plaintiff and Class members are entitled to injunctive and other equitable

2                relief, including restitution and disgorgement, and if so, the nature of such relief;

3        (o)     Whether Plaintiff and Class members are entitled to medical monitoring and

4                surveillance and medical treatment at Medtronic's expense;

5        (p)     Whether Medtronic is liable for punitive or exemplary damages, and if so, the

6                amount necessary and appropriate to punish them for their conduct, to deter

7                others, and to fulfill the other policies and purposes of punitive and exemplary

8                damages;

9        (q)     Whether Medtronic unjustly enriched itself at the expense of Plaintiff and Class

10               members; and,

11        (r)     Which mechanism, among the methods available under the *Federal Rules of Civil*

12               *Procedure*, is superior to ensure the fair and efficient adjudication of this

13               controversy within the meaning of *Fed. R. Civ. P.* 23(b)(3).

14       48.     Plaintiff's claims are typical of the claims of the Class members. Plaintiff and

15  other Class members must prove the same facts in order to establish the same claims, described

16  herein, which apply to all Class members.

17       49.     Plaintiff is an adequate representative of the Class because she is a member of the

18  Class and her interests do not conflict with the interests of the Class members she seeks to

19  represent.  Plaintiff has retained counsel competent and experienced in the prosecution of

20  products liability, mass torts, and consumer fraud class actions, and together Plaintiff and

21  counsel intend to prosecute this action vigorously for the benefit of the Class. The interests of

22  Class members will fairly and adequately be protected by Plaintiff and her counsel.

23       50.     A class action is superior to other available methods for the fair and efficient

24  adjudication of this litigation since individual litigation of the claims of all Class members is

25  impracticable.  Even if every Class member could afford individual litigation, the court system

26  could not.  It would be unduly burdensome to the courts, in which individual litigation of

27  thousands of cases would proceed.  Individual litigation presents a potential for inconsistent or

28  contradictory judgments, the prospect of a race for the courthouse, and an inequitable allocation

1  of recovery among those with equally meritorious claims.  Individual litigation increases the
2  expense and delay to all parties and the court system in resolving the legal and factual issues
3  common to all Medtronic Sprint Fidelis lead claims.  By contrast, the class action device presents
4  far fewer management difficulties and provides the benefit of a single adjudication, economies of
5  scale, and comprehensive supervision by a single court.

6      51.    The various claims asserted in this action are additionally or alternatively
7  certifiable under the provisions of *Federal Rules of Civil Procedure* 23(b)(1) and/or 23(b)(2)
8  because:

9      (i)    The prosecution of separate actions by thousands of individual Class members
10             would create a risk of inconsistent or varying adjudications with respect to
11             individual Class members, thus establishing incompatible standards of conduct for
12             Medtronic;

13     (ii)    The prosecution of separate actions by individual Class members would also
14             create the risk of adjudications with respect to them that would, as a practical
15             matter, be dispositive of the interests of the other Class members who are not a
16             party to such adjudications and would substantially impair or impede the ability of
17             such non-party Class members to protect their interests;

18     (iii)   Medtronic has acted or refused to act on grounds generally applicable to the entire
19             Class, thereby making appropriate final declaratory and injunctive relief with
20             respect to the Class as a whole.

21                              **ALLEGATIONS**

22     52.    Medtronic designed, manufactured, marketed, promoted, sold, and distributed 4
23  models of defective leads, including the Sprint Fidelis 6949 LFJ extendable/retractable screw
24  fixation (S) model; the 6948 LFH tuned fixation (T) model; the 6931 LFT S fixation; and the
25  6930 LFK fixation (T) model.  All of the aforementioned models contain the same defect.

26     53.    The Sprint Fidelis leads were originally approved for sale by the FDA in
27  September 2004.

28

- 13 -

1    54.    The Sprint Fidelis leads are uniformly defective in that they are prone to fracture
2  of the pace-sense conductor and coil and the HV conductor, causing them to fail to function in a
3  manner which may not be immediately detectable by the patient. The malfunctioning can lead to
4  terrifying inappropriate defibrillation shocks, failure to deliver appropriate (life-giving)
5  defibrillation therapy and death.

6    55.    There is no test that predicts whether the Sprint Fidelis leads will fail.

7    56.    To this day, Medtronic has refused to suggest replacement of the defective Sprint
8  Fidelis leads in its patients, even though in patients whom these defects have been discovered,
9  emergency replacement of the leads is required.

10    57.    Medtronic's failure to document or follow up on the known defects in its Sprint
11  Fidelis leads, and concealment of known defects from the FDA, Plaintiff, the medical
12  community and Class members constitutes fraudulent concealment that equitably tolls applicable
13  statutes of limitation.

14    58.    No member of the Class could have discovered the existence of the defect in the
15  Sprint Fidelis leads until, at least, March 2007, when the first physician advisory was sent by
16  Medtronic to physicians concerning the fragile nature of these leads.

17    59.    Medtronic is estopped from relying on the statute of limitations defense because
18  Medtronic actively concealed the lead defects, suppressing reports, failing to follow through on
19  FDA notification requirements, and failing to disclose known defects to physicians or class
20  members. Instead of revealing the defects, Medtronic continued to represent its products as safe
21  for their intended use.

22    60.    Medtronic's conduct, as described in the preceding paragraphs, amounts to
23  conduct purposely committed, which Medtronic must have realized was dangerous, heedless and
24  reckless, without regard to the consequences or the rights and safety of Plaintiff and Class
25  members.

26    61.    Thousands of patients' lives rely upon the proper functioning of these Sprint
27  Fidelis leads, and they— along with their physicians— have been vigorously attempting to
28  assess the risks that they now face.

- 14 -

1    62.    Patients and physicians remain uninformed and confused about whether the
2 devices should be explanted, or even whether all of the defects have been disclosed.

3    63.    Because of incomplete, inconsistent, and/or confusing information published by
4 Medtronic, it remains unclear how many patients are affected by these defective leads, although
5 based on the population of Medtronic patients whose claims are asserted in this complaints, it is
6 likely to be at least 1,500 and could be as high as 6,000 heart patients in the United States.

7    64.    At all times herein mentioned, Defendant was engaged in the business of, or was
8 successor in interest to, entities engaged in the business of researching, designing, formulating,
9 compounding, testing, manufacturing, producing, processing, assembling, inspecting,
10 distributing, marketing, labeling, promoting, packaging, prescribing and/or advertising for sale,
11 and selling products for use by Plaintiff and the members of her Class. As such, Defendant is
12 individually liable to Plaintiff and her Class for their damages.

13    65.    At all times herein mentioned, the officers and/or directors of the Defendant
14 named herein participated in, authorized and/or directed the production and promotion of the
15 aforementioned products when they knew, or with the exercise of reasonable care and diligence
16 should have known, of the hazards and dangerous propensities of said products, and thereby
17 actively participated in the tortuous conduct that resulted in the injuries suffered by Plaintiff and
18 the members of her Class.

19 **PLAINTIFF**

20    66.    Plaintiff Jeneane Baque has a cardiovascular condition that necessitates the use of
21 an implantable cardiac pacemaker/defibrillator. Ms. Baque was implanted with a cardiac
22 pacemaker/defibrillator combination (an "ICD"). The ICD was attached to her heart with a lead
23 wire system called a Sprint Fidelis lead, model number 6949, manufactured by Medtronic. The
24 Sprint Fidelis lead system was implanted on or about October 19, 2004. After that date, Ms.
25 Baque experienced a number of frightening episodes of unnecessary shocks.

26    67.    Ms. Baque's Sprint Fidelis lead was explanted on March 8, 2007 because it was
27 defective. The lead system itself had fractured. The fracture forced Ms. Baque to have an early
28

- 15 -

1 explant of the old lead system and implant of a new one, scarring her already fragile heart, and
2 subjecting her to a variety of other severe emotional and physical harms.

3    68.    The second implanted set of leads were of the same defective variety as the first,
4 bearing the same product number of 6949. This second set of defective leads remain inside her
5 body to this day. Consequently, she continues to be at risk of unnecessary and dangerous electric
6 shocks, in addition to being shadowed by a cloud of dread regarding future spontaneous and
7 unpredictable electric shocks, injuries resulting from those shocks, and possibly death.

8                              **CLAIMS FOR RELIEF**

9                            **FIRST CLAIM FOR RELIEF**

10                              **(Products Liability)**

11    69.    Plaintiff, on behalf of herself and all others similarly situated, re-alleges the
12 allegations contained in the foregoing paragraphs.

13    70.    At all relevant times hereto, Medtronic was engaged in the business of designing,
14 manufacturing, assembling, promoting, advertising, selling, and distributing the Sprint Fidelis
15 leads for ultimate sale to, and implantation in, heart disease/disorder patients. Medtronic
16 designed, manufactured, assembled, and sold the Sprint Fidelis leads to hospitals and physicians,
17 knowing that they would be thereby sold to patients with heart diseases and disorders (including
18 Plaintiff and Class members).

19    71.    Medtronic's Sprint Fidelis leads were expected to and did reach Plaintiff and the
20 Class without substantial change in their condition as manufactured and sold by Medtronic. In
21 light of the defects described herein, at the time the leads reached Plaintiff and the Class, they
22 were in a condition not contemplated by any reasonable person among the expected users of the
23 devices, and were unreasonably dangerous to the expected users of the devices when used in
24 reasonably expectable ways of handling or consumption.

25    72.    The Sprint Fidelis leads designed, manufactured, assembled, and sold by
26 Medtronic to Plaintiff and Class members were in a defective condition unreasonably dangerous
27 to any user or consumer of the devices, and Plaintiff and Class members were, and are, in the

28

- 16 -

1   class of persons that Medtronic should reasonably have foreseen as being subject to the harm
2   caused by the devices' defective condition.

3       73.    Plaintiff and Class members used the leads in the manner in which the leads were
4   intended to be used. This has resulted in injuries to Plaintiff and Class members.

5       74.    Neither Plaintiff nor Class members, were aware of, and could not in the exercise
6   of reasonable care have discovered, the defective nature of Medtronic's Sprint Fidelis leads, nor
7   could they have known that Medtronic designed, manufactured or assembled the leads in a
8   manner that would increase the risk of bodily injury to them.

9       75.    As a direct and proximate result of Medtronic's design, manufacture, assembly,
10  marketing and sales of the Sprint Fidelis leads, Plaintiff and the Class members have sustained
11  and will continue to sustain severe physical injuries and/or death, severe emotional distress, and
12  economic losses and consequential damages, and are therefore entitled to compensatory relief,
13  according to proof, and to a declaratory judgment that Medtronic is liable for breach of its duty
14  to them and for its failure to provide a safe and effective medical device. Plaintiff and the Class
15  members are also entitled to equitable relief, as described below.

16      76.    Medtronic's Sprint Fidelis leads constitute a product dangerous for its reasonably
17  intended use, due to defective design, manufacture, assembly, and marketing. Medtronic is
18  therefore liable to Plaintiff and Class members in an amount according to proof.

19                          **SECOND CLAIM FOR RELIEF**

20                          **(Breach of Implied Warranty)**

21      77.    Plaintiff, on behalf of herself and all others similarly situated, re-alleges the
22  allegations contained in the foregoing paragraphs.

23      78.    Medtronic impliedly warranted that its Sprint Fidelis leads, which Medtronic
24  designed, manufactured, assembled, promoted and sold to Plaintiff and Class members, were
25  merchantable and fit and safe for ordinary use. Medtronic further impliedly warranted that its
26  Sprint Fidelis leads were fit for the particular purpose of providing prophylactic treatment of
27  patients with a variety of medical issues, including prior myocardial infarction and a limited

28

---

- 17 -

Class Action Complaint For Damages and Equitable Relief

1   ejection fraction, spontaneous and/or inducible life-threatening ventricular arrhythmias, and a
2   high risk for developing such arrhythmias.

3       79.    Medtronic further impliedly warranted that its Sprint Fidelis leads were based on
4   "proven" lead technology and that the Sprint Fidelis leads were easier to implant.

5       80.    Medtronic's Sprint Fidelis leads were defective, unmerchantable, and unfit for
6   ordinary use when sold, and unfit for the particular purpose for which they were sold, and
7   subjected Plaintiff and Class members to severe and permanent injuries and death. Therefore,
8   Medtronic breached the implied warranties of merchantability and fitness for a particular purpose
9   when its leads were sold to Plaintiff and Class members, in that the leads are defective and have
10  fractured and otherwise failed to function as represented and intended.

11      81.    As a direct and proximate result of Medtronic's breach of the implied warranties
12  of merchantability and fitness for a particular purpose, Plaintiff and Class members have
13  sustained and will continue to sustain severe physical injuries and/or death, severe emotional
14  distress, and economic losses, and are therefore entitled to compensatory damages and equitable
15  relief according to proof.

16                          **THIRD CLAIM FOR RELIEF**
17                              **(Negligence)**

18      82.    Plaintiff, on behalf of herself and all others similarly situated, re-alleges the
19  allegations contained in the foregoing paragraphs.

20      83.    Medtronic had a duty to Plaintiff and Class members to provide a safe product in
21  design and manufacture, to notify the FDA of design flaws, and to warn the FDA, Plaintiff, and
22  Class members of the defective nature of the Sprint Fidelis leads. Medtronic breached its duty of
23  reasonable care to Plaintiff and Class members by incorporating a defect into the design of the
24  Sprint Fidelis leads, thereby causing Plaintiff's and Class members' injuries.

25      84.    Medtronic breached its duty of reasonable care to Plaintiff and Class members by
26  manufacturing and assembling the Sprint Fidelis leads in such a manner that they were prone to
27  fracture and fail to operate and malfunction and expose Plaintiff and Class members to life-
28  threatening physical trauma.

- 18 -

Class Action Complaint For Damages and Equitable Relief

85.    Medtronic breached its duty of reasonable care to Plaintiff and Class members by failing to notify the FDA at the earliest possible date of known design defects in the leads.

86.    Medtronic breached its duty of reasonable care to Plaintiff and Class members by failing to exercise due care under the circumstances.

87.    As a direct and proximate result of the carelessness and negligence of Medtronic as set forth in the preceding paragraphs, Plaintiff and Class members have sustained and will continue to sustain severe physical injuries and/or death, severe emotional distress, economic losses and other damages, are entitled to compensatory damages and equitable and declaratory relief according to proof.  Medtronic's egregious misconduct alleged above also warrants the imposition of punitive damages against Medtronic.

## FOURTH CLAIM FOR RELIEF

### (Intentional Infliction of Emotional Distress)

88.    Plaintiff, on behalf of herself and all others similarly situated, re-alleges the allegations contained in the foregoing paragraphs.

89.    Medtronic engaged in extreme and outrageous conduct, knowingly and/or recklessly marketing defective leads, knowingly and/or recklessly concealing a known and potentially fatal defect from Plaintiff and Class members, and knowingly and/or recklessly misrepresenting the quality and usefulness of the Sprint Fidelis leads.

90.    As a direct result of Medtronic's misconduct, Plaintiff and Class members have sustained and will continue to sustain physical injuries and/or death, economic losses, and other damages.

91.    Medtronic intended to cause Plaintiff's and Class members' severe emotional distress, or acted with reckless disregard for the Plaintiff's and the Class members' emotional states.

92.    Plaintiff and Class members did, in fact, incur (and continue to incur) severe emotional distress as a result of Medtronic's misconduct.  Accordingly, Plaintiff and the Class members are entitled to compensatory damages and equitable and declaratory relief according to proof.

- 19 -

Class Action Complaint For Damages and Equitable Relief

93.    Medtronic's misconduct alleged above warrants the imposition of punitive damages against Medtronic.

### FIFTH CLAIM FOR RELIEF

### (Negligent Infliction of Emotional Distress)

94.    Plaintiff, on behalf of herself and all others similarly situated, re-alleges the allegations contained in the foregoing paragraphs.

95.    Medtronic carelessly and negligently manufactured, marketed and sold defective Sprint Fidelis leads to Plaintiff and Class members, carelessly and negligently concealed these defects from Plaintiff and Class members, and carelessly and negligently misrepresented the quality, safety and usefulness of the leads.

96.    Plaintiff and Class members were directly involved in and directly impacted by Medtronic's carelessness and negligence, in that Plaintiff and Class members have sustained and will continue to sustain severe physical injuries and/or death, economic losses, and other damages as a direct result of the decision to purchase, use and have implanted in their bodies a defective and dangerous product manufactured, sold and distributed by Medtronic.

97.    Medtronic's misconduct as alleged above has caused Plaintiff and Class members to suffer severe emotional trauma, physical consequences and long continued emotional disturbance.  Plaintiff and Class members are therefore entitled to compensatory damages and equitable and declaratory relief according to proof.

### SIXTH CLAIM FOR RELIEF

### (Violation of Consumer Protection Statutes)

98.    Plaintiff, on behalf of herself and all others similarly situated, re-alleges the allegations contained in the foregoing paragraphs.

99.    Defendant has a statutory duty to refrain from unfair or deceptive acts or practices in the design, development, manufacture, promotion and sale of the defective leads.

100.    Had the Defendant not engaged in the deceptive conduct described above, Plaintiff would not have purchased and/or paid for the defective leads, and would not have incurred related medical costs.

- 20 -

101.    Defendant's deceptive, unconscionable or fraudulent representations and material omissions to patients, physicians and consumers, including Plaintiff, constituted unfair and deceptive acts and practices in violation of the state consumer protection statutes listed below.

102.    Defendant engaged in wrongful conduct while at the same time obtaining, under false pretenses, substantial sums of money from Plaintiff for the defective leads that they would not have paid had Defendant not engaged in unfair and deceptive conduct.

103.    Defendant's actions, as complained of herein, constitute unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of state consumer protection statutes, as listed below:

(a)    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Ala. Code § 8-19-1, et seq.;

(b)    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Alaska Stat. § 45.50.471, et seq.;

(c)    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Ariz. Rev. Stat. § 44-1522, et seq.;

(d)    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Ark. Code § 4-88-101, et seq.;

(e)    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Cal. Civ. Code §1770, et seq. and Cal. Bus. & Prof. Code § 17200, et seq.;

(f)    Defendant has engaged in unfair competition or unfair or deceptive acts or practices or has made false representations in violation of Colo. Rev. Stat. § 6-1-105, et seq.;

(g)    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Conn. Gen. Stat. § 42-110a, et seq.;

(h)    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of 6 Del. Code §§ 2511, et seq. and 2531, et seq.;

- 21 -

Class Action Complaint For Damages and Equitable Relief

1    (i)   Defendant has engaged in unfair competition or unfair or deceptive acts or
2          practices or made false representations in violation of D.C. Code § 28-3901, et
3          seq.;
4    (j)   Defendant has engaged in unfair competition or unfair or deceptive acts or
5          practices in violation of Fla. Stat. § 501.201, et seq.;
6    (k)   Defendant has engaged in unfair competition or unfair or deceptive acts or
7          practices in violation of Ga. Stat. §§10-1-372, et seq., 10-1-392 and 10-1-420.
8    (l)   Defendant has engaged in unfair competition or unfair or deceptive acts or
9          practices in violation of Haw. Rev. Stat. § 480-1, et seq.;
10   (m)  Defendant has engaged in unfair competition or unfair or deceptive acts or
11         practices in violation of Idaho Code § 48-601, et seq.;
12   (n)   Defendant has engaged in unfair competition or unfair or deceptive acts or
13         practices in violation of 815 ILCS § 505/1, et seq.;
14   (o)   Defendant has engaged in unfair competition or unfair or deceptive acts or
15         practices in violation of Ind. Code Ann. § 24-5-0.5-1, et seq.;
16   (p)   Defendant has engaged in unfair competition or unfair or deceptive acts or
17         practices in violation of Iowa Code § 714.16, et seq.;
18   (q)   Defendant ha engaged in unfair competition or unfair or deceptive acts or
19         practices in violation of Kan. Stat. § 50-623, et seq.;
20   (r)   Defendant has engaged in unfair competition or unfair or deceptive acts or
21         practices in violation of Ky. Rev. Stat. § 367.170, et seq.;
22   (s)   Defendant has engaged in unfair competition or unfair or deceptive acts or
23         practices in violation of La. Rev. Stat. § 51:1401, et seq.;
24   (t)   Defendant has engaged in unfair competition or unfair or deceptive acts or
25         practices in violation of 5 Me. Rev. Stat. § 205A, et seq.;
26   (u)   Defendant has engaged in unfair competition or unfair or deceptive acts or
27         practices in violation of Md. Com. Law Code § 13-101, et seq.;
28

- 22 -

1    (v)    Defendant has engaged in unfair competition or unfair or deceptive acts or

2            practices in violation of Mass. Gen. L. Ch. 93A, et seq.;

3    (w)    Defendant has engaged in unfair competition or unfair or deceptive acts or

4            practices in violation of Mich. Comp. Laws Ann. § 445.901, et seq.;

5    (x)    Defendant has engaged in unfair competition or unfair or deceptive acts or

6            practices in violation of Minn. Stat. §§ 325D.43, et seq., 325F.67, et seq. and

7            325F.68 et seq.;

8    (y)    Defendant has engaged in unfair competition or unfair or deceptive acts or

9            practices in violation of Miss. Code Ann. § 75-24-1, et seq.;

10   (z)    Defendant has engaged in unfair competition or unfair or deceptive acts or

11           practices in violation of Vernon's Ann. Missouri Stat. § 407.010, et seq.;

12   (aa)   Defendant has engaged in unfair competition or unfair or deceptive acts or

13           practices in violation of Mont. Code Ann. § 30-14-101, et seq.;

14   (bb)   Defendant has engaged in unfair competition or unfair or deceptive acts or

15           practices in violation of Neb. Rev. Stat. § 59-1601, et seq.;

16   (cc)   Defendant has engaged in unfair competition or unfair or deceptive acts or

17           practices in violation of Nev. Rev. Stat. Ann. § 598.0903, et seq.;

18   (dd)   Defendant has engaged in unfair competition or unfair or deceptive acts or

19           practices in violation of N.H. Rev. Stat. § 358-A:1, et seq.;

20   (ee)   Defendant has engaged in unfair competition or unfair, unconscionable or

21           deceptive acts or practices in violation of N.J. Rev. Stat. § 56:8-1, et seq.;

22   (ff)   Defendant has engaged in unfair competition or unfair or deceptive acts or

23           practices in violation of N.M. Stat. § 57-12-1, et seq.;

24   (gg)   Defendant has engaged in unfair competition or unfair or deceptive acts or

25           practices in violation of N.Y. Gen. Bus. Law §§ 349 et seq. and 350-e, et seq.;

26   (hh)   Defendant has engaged in unfair competition or unfair or deceptive acts or

27           practices in violation of N.C. Gen. Stat. § 75-1.1, et seq.;

28

- 23 -

Class Action Complaint For Damages and Equitable Relief

1    (ii)   Defendant has engaged in unfair competition or unfair or deceptive acts or

2        practices in violation of N.D. Cent. CODE §§ 51-12-01, et seq., and 51-15-01, et

3        seq.;

4    (jj)   Defendant has engaged in unfair competition or unfair or deceptive acts or

5        practices in violation of Ohio Rev. Stat. § 1345.01, et seq.;

6    (kk)   Defendant has engaged in unfair competition or unfair or deceptive acts or

7        practices or made false representations in violation of Okla. Stat. 15 § 751, et seq.;

8    (ll)   Defendant has engaged in unfair competition or unfair or deceptive acts or

9        practices in violation of Or. Rev. Stat. § 646.605, et seq.;

10    (mm)  Defendant has engaged in unfair competition or unfair or deceptive acts or

11        practices in violation of 73 Pa. Stat. § 201-1, et seq.;

12    (nn)   Defendant has engaged in unfair competition or unfair or deceptive acts or

13        practices in violation of R.I. Gen. Laws. § 6-13.1-1, et seq.;

14    (oo)   Defendant has engaged in unfair competition or unfair or deceptive acts or

15        practices in violation of S.C. Code Laws § 39-5-10, et seq.;

16    (pp)   Defendant has engaged in unfair competition or unfair or deceptive acts or

17        practices in violation of S.D. Codified Laws § 37-24-1, et seq.;

18    (qq)   Defendant has engaged in unfair competition or unfair or deceptive acts or

19        practices in violation of Tenn. Code § 47-18-101, et seq.;

20    (rr)   Defendant has engaged in unfair competition or unfair or deceptive acts or

21        practices in violation of Tex. Bus. & Com. Code § 17.41, et seq.;

22    (ss)   Defendant has engaged in unfair competition or unfair or deceptive acts or

23        practices in violation of Utah Code. § 13-11-1, et seq.;

24    (tt)   Defendant has engaged in unfair competition or unfair or deceptive acts or

25        practices in violation of 9 Vt. § 2451, et seq.;

26    (uu)   Defendant has engaged in unfair competition or unfair or deceptive acts or

27        practices in violation of Va. Code § 59.1-196, et seq.;

28

- 24 -

1      (vv)    Defendant has engaged in unfair competition or unfair, deceptive or fraudulent

2           acts or practices in violation of Wash. Rev. Code. § 19.86.010, et seq.;

3      (ww)  Defendant has engaged in unfair competition or unfair or deceptive acts or

4           practices in violation of West Virginia Code § 46A-6-101, et seq.;

5      (xx)    Defendant has engaged in unfair competition or unfair or deceptive acts or

6           practices in violation of Wis. Stat. §100.20, et seq.; and

7      (yy)    Defendant has engaged in unfair competition or unfair or deceptive acts or

8           practices in violation of Wyo. Stat. § 40-12-101, et seq.

104.    Plaintiff and her Class were injured by the cumulative and indivisible nature of Defendant's conduct. The cumulative effect of Defendant's conduct directed at patients, physicians and consumers was to create demand for and sell the defective leads. Each aspect of Defendant's conduct combined to artificially create sales of the defective leads.

105.    The medical community relied upon Defendant's misrepresentations and omissions in determining which cardiac device to utilize.

106.    By reason of the unlawful acts engaged in by Defendant, Plaintiff and her Class have suffered ascertainable loss and damages.

107.    As a direct and proximate result of Defendant's wrongful conduct, Plaintiff and her Class were damaged by paying in whole or in part for these defective leads.

108.    As a direct and proximate result of Defendant's violations of state consumer protection statutes, Plaintiff and her Class have sustained economic losses and other damages for which they are entitled to statutory, compensatory damages and declaratory relief in an amount to be proven at trial. Defendant is liable to Plaintiff and each member of her Class jointly and severally for all general, special and injunctive relief to which Plaintiff and her Class are entitled by law. Under statutes enacted in California and all other states, and the District of Columbia, to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising, Plaintiff and Class members are consumers who purchased Medtronics' Sprint Fidelis leads pursuant to a consumer transaction for personal use and are therefore subject to protection under such legislation.

Class Action Complaint For Damages and Equitable Relief

1    109.    Under statutes enacted in California and all other states, and the District of
2    Columbia, to protect consumers against unfair, deceptive, fraudulent and unconscionable trade
3    and business practices and false advertising, Medtronic is the supplier, manufacturer, advertiser,
4    and seller, who is subject to liability under such legislation for unfair, deceptive, fraudulent and
5    unconscionable consumer sales practices.

6    110.    Defendant violated the statutes enacted in California and all other states, and the
7    District of Columbia, to protect consumers against unfair, deceptive, fraudulent and
8    unconscionable trade and business practices and false advertising, by knowingly and falsely
9    representing that the leads were fit to be used for the purpose for which they were intended,
10    when in fact the leads were defective and dangerous, and by other acts alleged herein.  These
11    representations were made in uniform promotional materials.

12    111.    The actions and omissions of Defendant alleged herein are uncured or incurable
13    deceptive acts under the statutes enacted in California and all other states, and the District of
14    Columbia, to protect consumers against unfair, deceptive, fraudulent and unconscionable trade
15    and business practices and false advertising.

16    112.    Defendant had actual knowledge of the defective and dangerous condition of the
17    Sprint Fidelis leads, and failed to take any action to cure such defective and dangerous
18    conditions.

19    **SEVENTH CLAIM FOR RELIEF**
20    **(Breach of Express Warranties)**

21    113.    Plaintiff, on behalf of herself and all others similarly situated, re-alleges the
22    allegations contained in the foregoing paragraphs.

23    114.    Defendant expressly warranted to Plaintiff by and through Defendant and/or its
24    authorized  agents  or  sales  representatives,  in  publications,  the  internet,  and  other
25    communications intended for medical patients, and the general public, that the defective leads
26    were safe, effective, fit and proper for their intended use.

27    115.    In allowing the implantation of the defective leads, Plaintiffs relied on the skill,
28    judgment, representations, and express warranties of Defendant.    These warranties and

- 26 -

1  representations were false in that the defective leads were not safe and were unfit for the uses for
2  which they were intended.

3      116.    Through its sale of the defective leads, Defendant is a merchant pursuant to
4  Section 2-314 of the *Uniform Commercial Code*.

5      117.    Any disclaimers of express warranties are ineffectual as they were not provided to
6  Plaintiff and her Class or otherwise made known to them. In addition, any such disclaimers are
7  unconscionable.

8      118.    As a direct and proximate result of Defendant's breach of express warranty,
9  Plaintiffs have sustained economic losses and other damages for which they are entitled to
10  compensatory damages in an amount to be proven at trial. Any disclaimer of consequential
11  damages is invalid as the limited remedy provided fails in its essential purpose to redress the
12  harm and damages to Plaintiff and her Class in that it, in effect, provides no remedy at all for the
13  defect necessary to be redressed. In addition, any such disclaimer of consequential damages in
14  unconscionable. Defendant is liable to Plaintiff each member of her Class jointly and severally
15  for all damages to which Plaintiff and her Class are entitled by law.

16              **EIGHTH CLAIM FOR RELIEF**

17                  **(Unjust Enrichment)**

18      119.    Plaintiff, on behalf of herself and all others similarly situated, re-alleges the
19  allegations contained in the foregoing paragraphs.

20      120.    As the intended and expected result of their conscious wrongdoing, Defendant has
21  profited and benefited from the purchase of Defendant's defective leads by Plaintiff and each
22  member of her Class.

23      121.    Defendant has voluntarily accepted and retained these profits and benefits,
24  derived from the Plaintiff and Plaintiff's Class, with full knowledge and awareness that, as a
25  result of Defendant's wrongdoing, Plaintiff and her Class were not receiving a product of the
26  quality, nature or fitness that had been represented by Defendant or that Plaintiff and the
27  members of her Class, as reasonable consumers, expected.

28

- 27 -

1    122.   By virtue of the conscious wrongdoing alleged above, Defendant has been
2  unjustly enriched at the expense of the Plaintiff and her Class, who are entitled to in equity, and
3  hereby seek, the disgorgement and restitution of Defendant's wrongful profits, revenues and
4  benefits, to the extent and in the amount deemed appropriate by the Court; and such other relief
5  as the Court deems just and proper to remedy the Defendant's unjust enrichment.

6

## NINTH CLAIM FOR RELIEF

7

### (Declaratory Relief and Medical Monitoring)

8    123.   Plaintiff, on behalf of herself and all others similarly situated, re-alleges the
9  allegations contained in the foregoing paragraphs.

10    124.   Plaintiff and Class members have no adequate remedy at law and damages cannot
11  adequately compensate Plaintiff and Class members for the injuries suffered and threatened,
12  rendering declaratory, injunctive, and other equitable relief appropriate.

13    125.   Through the unlawful conduct set forth in the preceding paragraphs, Plaintiff and
14  tens of thousands of Class members have been implanted with a device which tends to fracture,
15  and otherwise malfunction. These defects have potentially fatal consequences for many patients
16  who rely upon the presence of the leads connected to the ICDs to regulate their cardiac rhythms.

17    126.   There are medical risks to Plaintiff and Class members associated with having the
18  defective Sprint Fidelis leads explanted, as they have been implanted directly onto the heart wall.
19  Explantation procedures expose Plaintiff and Class members to significant risks attendant to
20  surgery, not least of which are potentially life-threatening infections and other harm.

21    127.   At the same time, Plaintiff and Class members, along with their physicians, must
22  weigh these risks against the possibility that Medtronic's Sprint Fidelis leads will fail or have
23  failed to function as designed, represented and intended, resulting in an increased risk of heart
24  damage, failure and/or death.

25    128.   Accordingly, Plaintiff, on behalf of herself and all others similarly situated,
26  request the following classwide equitable relief:

27    (a)   That Medtronic be ordered to notify all potential Class members of the defective
28        nature of the Sprint Fidelis leads;

- 28 -

1      (b)    That Medtronic be ordered to create a treatment fund, under the continuing

2              jurisdiction and supervision of this Court, to monitor the health of Plaintiff and

3              Class members, and to pay or reimburse Plaintiff and Class members for all

4              evaluative, monitoring, diagnostic, preventative, and corrective medical, surgical,

5              and incidental expenses caused by Medtronic's wrongdoing; and

6      (c)    Declaratory judgment that Medtronic is liable to Plaintiff and all Class members

7              for all evaluative, monitoring, diagnostic, preventative, and corrective medical,

8              surgical, and incidental expenses, costs and losses caused by Medtronic's

9              wrongdoing.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, prays for judgment against Medtronic as follows:

1.    For an Order certifying the Class and any appropriate subclasses thereof under the appropriate provisions of Federal Rule of Civil Procedure 23, and appointing Plaintiff and her counsel to represent the Class;

2.    For the equitable relief requested;

3.    For compensatory damages according to proof;

4.    For punitive or exemplary damages against Medtronic, consistent with the degree of Medtronic's reprehensibility and the resulting harm or potential harm to Plaintiff and the Class, and in an amount sufficient to punish Medtronic and deter others from similar wrongdoing;

5.    For all applicable statutory damages under the consumer protection legislation of California, and all states and the District of Columbia;

6.    For declaratory judgment that Medtronic is liable to Plaintiff and Class members for all evaluative, monitoring, diagnostic, preventative, and corrective medical, surgical, and incidental expenses, costs and losses caused by Medtronic's wrongdoing;

7.    For notice to be disseminated to all Class members who have been implanted with Sprint Fidelis leads;

Class Action Complaint For Damages and Equitable Relief

1    8.    For a restitution and disgorgement of profits;

2    9.    For an award of attorneys' fees and costs;

3    10.    For prejudgment interest and the costs of suit; and

4    11.    For such other and further relief as this Court may deem just and proper.

5    **DEMAND FOR JURY TRIAL**

6    Plaintiff, on behalf of herself and all others similarly situated, hereby demands a trial by

7    jury in this case as to such issues so triable.

8

9    Dated:  19 October 2007                     *EDGAR LAW FIRM*

10
                                          By:
11                                              Donald S. Edgar, Esq.
12                                              Jeremy R. Fietz, Esq.
                                              Rex Grady, Esq.
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 30 -

Class Action Complaint For Damages and Equitable Relief